IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| JAMES THOMPSON, § | | |
| TDCJ-CID # 693716, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. V-05-025 |
| § | | |
| OWEN J. MURRAY, § | | |
| § | | |
| Defendant. § | | |

**MEMORANDUM OPINION AND ORDER**

James Thompson, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), has filed a civil rights complaint under 42 U.S.C. § 1983 against TDCJ-CID officials alleging denial of adequate medical care for a broken right hand.  After reviewing the pleadings, which include Thompson's More Definite Statement, this court has determined that this action should be **DISMISSED** because it lacks an arguable legal basis.

**I. Claims and Allegations**

In his Original Complaint (Docket Entry No. 1), Thompson names Owen J. Murray, Director of Facility Operations of the University of Texas Medical Branch, as a defendant arguing that Murray was in charge of the TDCJ-CID Stevenson Unit health care workers who denied him medical attention for his injured hand.  In his More Definite Statement (Docket Entry No. 6), Thompson adds Bruce Ramsey, a Physician's Assistant, as a defendant alleging that he failed to provide effective treatment in a timely manner.

Thompson states that he fractured two bones in his hand during a recreational period at the Stevenson Unit on May 28, 2004.  He was permitted to go to the Unit Infirmary where he was

examined. The workers gave Thompson an ice pack to reduce the swelling and X-rayed his hand. They then placed the injured hand in a brace and put the arm in a sling to restrict movement. PA Ramsey attempted to set the break but was unsuccessful in doing so. Thompson was then classified as medically unassigned which relieved him of having to report to work. Arrangements were made for treatment at John Sealy Hospital; however, the appointment was cancelled for some unexplained reason.

Thompson filed a Step One Grievance on July 6, 2004. On August 18, 2004, he received a response from Warden Brad Casal stating that a referral had been made for Thompson to see a specialist on June 3, 2004, but it had been changed to July 7, 2004, and that a subsequent approval to expedite had been made on July 26, 2004. *See* Docket Entry No. 1, at 10. Warden Casal then assured Thompson that he was scheduled to see a hand specialist on August 26, 2004, who would then be able to determine what further treatment was necessary and that Thompson would continue to receive treatment upon his request at the Stevenson Unit and would remain medically unassigned for the next ninety days. *Id*. Thompson also sent I-60s or requests for medical help to Mrs. Reamy, a medical administrator, seeking attention. Each time, Thompson was assured that help was forthcoming.

On August 20, 2004, Thompson filed a Step Two Grievance stating that the Stevenson Unit medical department had inadequately treated his injury. He complained that he was only given medication and that his hand, although healing, was becoming disfigured. *Id.* at 23. The response to this grievance, from Grey Smith, a grievance administrator, stated that the medical records and prior grievance reflected that Thompson's concerns had been previously addressed. *Id*. at 24. Thompson was then advised that he should direct his correspondence to UTMB Managed Health

Care. *Id.* Thompson also wrote to the Patient Liaison Program of the TDCJ-CID Patient Health Service who similarly responded that Thompson needed to direct his correspondence to UTMB since that entity is actually responsible for inmate medical treatment. Docket Entry No. 1, at 25-26.

Thompson eventually saw a specialist on November 5, 2004. Docket Entry No. 1, at 20; Docket Entry No. 6, at 1. However, by that time the fractures had healed to such an extent that they could not be reset. Ramsey admitted to Thompson that a mistake had been made with regard to scheduling. Docket Entry No. 6, at 1.

## II. Analysis

To assert a claim under section 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Moore v. Willis Independent School Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). In general, a prisoner civil rights suit hinges upon a showing that custodial officials violated his right to humane treatment pursuant to the Eighth Amendment which prohibits acts or omissions that inflict wanton and unnecessary pain upon incarcerated individuals. *Palmer v. Johnson,* 193 F.3d 346 (5th Cir. 1999). Its purpose is to prevent prison conditions that would shock the public conscience. *Porth v. Farrier*, 934 F.2d 154, 157 (8th Cir. 1991); *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983). The right does not guarantee a convicted felon a comfortable environment. *Rhodes v. Chapman*, 101 S.Ct. 2392, 2400 (1981). Thomspson's claims against each defendant will be analyzed in compliance with these standards.

### A.   Murray - No Personal Involvement

As stated above, Thompson has a right to humane treatment while incarcerated. However, he cannot assert a claim against a defendant unless he can present facts which demonstrate that the

3

defendant was personally involved in the alleged deprivation. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Thompson contends that Murray should be held responsible for the alleged deprivation because he was in charge of the health care unit which failed to provide him adequate and timely medical services. Murray cannot be held liable merely because he supervised others who may have violated a prisoner's rights. *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996) ("There is no respondeat superior liability under section 1983."). Without any facts showing that Murray was personally involved in the alleged deprivations, Thompson can only seek damages if he can prove that Murray implemented unconstitutional policies that were the cause of his injuries. *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). There are no factual allegations which would support a finding that any such policies caused any injuries, and Murray cannot be held to be liable. *Baker v Putnal*, 75 F.3d 190, 199 (5th Cir. 1996).

      B.      <u>Ramsey - No Deliberate Indifference</u>

Pursuant to the Eighth Amendment's prohibition against cruel and unusual punishment, Thompson has a right of access to basic medical treatment. *Estelle v. Gamble*, 97 S.Ct. 285, 290 (1976). This right is violated if a prison official or health care provider is deliberately indifferent to his serious medical needs. *Id*. at 292. A custodial official or health care worker is deliberately indifferent to an inmate's serious health or medical needs if he (1) is aware of facts from which an inference of an excessive risk to the prisoner's health or safety can be drawn and (2) actually draws an inference that such potential for harm exists. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998), *citing Farmer v. Brennan*, 114 S.Ct. 1970 (1994). Deliberate indifference requires less than conduct undertaken for the very purpose of causing harm, but more than negligence. *See Farmer v. Brennan*, 114 S.Ct. 1970, 1978 (1994).

The facts presented in this case show that Thompson was treated immediately after he was injured. His hand was examined, X-rayed, braced, and given ice to reduce the swelling. He was also taken off of work detail and arrangements were made to send him to John Sealy Hospital for further evaluation. The cited actions by the prison health care providers made in response to Thompson's injury serve to defeat his argument that he was denied medical attention. *See Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir.1993).

Thompson's complaint centers on the delay in bringing him to a specialist. Although prisoners are entitled to medical attention, they do not have a right to the best treatment available and there is no guarantee that a prisoner's ailment will be successfully treated. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991); *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992). The alleged facts indicate that the purported delay in getting Thompson to a specialist was the result of an oversight on the part of whoever was responsible for scheduling and transporting inmates for healthcare services. It does not support a finding of deliberate indifference where there is no showing that whoever was responsible for the delay was aware that their action or inaction would cause substantial harm. *Sibley v. Lamar,* 184 F.3d 481, 489 (5th Cir. 1999). *See also Robert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006). At the most, the facts indicate negligence on the part of one or more healthcare workers which would not support a finding of deliberate indifference in violation of Thompson's constitutional rights. *Estelle*, 97 S.Ct. at 292. In addition, there are no facts which indicate that Ramsey, the only named defendant who had any personal contact with Thompson, had any direct responsibility for scheduling Thompson for an appointment with a specialist. Ramsey cannot be held liable for the alleged deprivations absent a showing that he was personally involved in the alleged delay. *Thompson*, 709 F.2d at 382.

Thompson is proceeding as a pauper and his action is subject to dismissal if the claims are legally baseless. 28 U.S.C. § 1915(e). This action is **DISMISSED** as frivolous because the claims are legally insupportable.

### III. Conclusion

The court **ORDERS** the following:

1. This civil rights complaint filed by James Thompson, TDCJ # 693716, is **DISMISSED** as frivolous. 28 U.S.C. § 1915(e)(2).

2. The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties and the TDCJ - Office of the General Counsel, P.O. Box 13084, Austin, Texas, 78711, Fax Number (512) 936-2159; the Pro Se Law Clerk, United States District Court, Eastern District of Texas, Tyler Division, 2ll West Ferguson, Tyler, Texas 75702.

**SIGNED** on this 18th day of March, 2008.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE